IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| CARLA PEDERSON, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 07-1429-MO |
| | ) | |
| v. | ) | OPINION AND ORDER |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**MOSMAN, J.,**

Plaintiff Carla Pederson ("Ms. Pederson") challenges the Commissioner's decision finding her not disabled under Title II of the Social Security Act and denying her application for Disability Insurance Benefits ("DIB"). I have jurisdiction under 42 U.S.C. § 405(g). For the following reasons, the Commissioner's decision is AFFIRMED.

I review the Commissioner's decision to ensure the Commissioner applied proper legal standards and that his findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

## PROCEDURAL BACKGROUND

Ms. Pederson applied for DIB under Title II of the Social Security Act on March 30, 2004. 85-87.[1]  After the Commissioner denied these applications, an Administrative Law Judge ("ALJ") held four hearings (AR 503-64) and subsequently found Ms. Pederson not disabled on February 23, 2007.  AR 13-28.  Ms. Pederson appeals the ALJ's denial.

## THE ALJ'S FINDINGS

The ALJ made her decision based upon the five-step sequential process established by the Commissioner.  *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (9th Cir. 1987); *see* also 20 C.F.R. § 404.1520 (establishing the five-step evaluative process for DIB claims).

The ALJ's decision found Ms. Pederson's pain disorder, "depressive disorder/dysthymia," anxiety features, marijuana abuse, dependent personality disorder, "possible" borderline IQ, and "possible" reflex sympathetic dystrophy  "severe" at step two in the sequential proceedings.  AR 17. The ALJ found that these impairments did not meet or equal a disorder "listed" in the Commissioner's regulations, and assessed Ms. Pederson's residual functional capacity ("RFC"):

> [W]ithout marijuana, the claimant had the residual functional capacity to perform sedentary to light work that involved no more than two noncontinuous hours of standing/walking out of an eight hour workday.  She could have performed simple routine tasks, but she would have been precluded from having close interaction with the general public or with co-workers.

---

[1]Citations AR refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer February 20, 2008 (Docket #10).

AR 25.

The ALJ found that Ms. Pederson could no longer perform her past relevant work at step four (AR 26), but found that she could perform jobs existing in the national economy at step five. The ALJ therefore found Ms. Pederson ineligible for DIB benefits at any time through the date of her decision. AR 28.

<u>**ANALYSIS**</u>

Ms. Pederson challenges the ALJ's step two findings, the ALJ's evaluation of the medical evidence, the ALJ's assessment of a lay witness's testimony, and the ALJ's reliance upon the testimony of a vocational expert at step five in the sequential proceedings.

**I.      The ALJ's Step Two Findings**

Ms. Pederson contends that the ALJ failed to find her degenerative disc disease severe at step two in the sequential proceedings. Pl.'s Opening Br. 15.

At step two in the sequential proceedings, the ALJ determines if the claimant has a "severe" impairment. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is "severe" if it "significantly limits your ability to do basic work activities." 20 C.F.R. § 404.1520(c); *see also* 20 C.F.R. § 404.1521. Such an impairment must last, or be expected to last, twelve months. 20 C.F.R. § 404.1509.

The ALJ's analysis at steps four and five must consider all of a claimant's impairments, both severe and non-severe. 20 C.F.R. § 404.1545(a)(2). Because the ALJ proceeded beyond step two in the sequential analysis, the court will consider the effect of the ALJ's alleged error in reviewing the ALJ's subsequent findings. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir 2007) (holding an ALJ's step two omission harmless when the ALJ proceeded beyond step two in the sequential analysis).

These findings are reviewed below.

The court additionally notes that Ms. Pederson's step two challenge cites lay witness testimony. Pl.'s Opening Br. 16. Such citation is inappropriate because step two findings rely upon medical evidence only. 20 C.F.R. § 404.1520(a)(4)(ii).

## II.    Medical Source Statements

Ms. Pederson challenges the ALJ's assessment of a medical source statement signed by a treating physician and a nurse practitioner, and the ALJ's reliance upon a medical expert who testified at her hearing. Ms. Pederson also challenges the ALJ's assessment of her degenerative disc disease.

### A.    Standards: Medical Source Statements

Generally, the ALJ must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If two opinions conflict, an ALJ must give "specific and legitimate reasons" for discrediting a treating physician in favor of an examining physician. *Id.* The opinion of a nonexamining physician "cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Id.* at 831. The ALJ may, however, rely upon a medical expert's opinion that is supported by the record. *Id.* (citing *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1995).

Nurse practitioners are not "acceptable medical sources" under the Commissioner's regulations. 20 C.F.R. § 404.1513(d)(1). If a nurse practitioner works under the supervision of a physician in a team environment, then her opinion may be construed as an element of the physician's opinion. *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996).

PAGE 4 - OPINION AND ORDER

**B.        November 10, 2005, Medical Source Statement**

Ms. Pederson contends that the ALJ improperly rejected a November 10, 2005, medical source statement signed by treating physician Dr. Mims and nurse practitioner Elizabeth Matuk. Pl.'s Opening Br. 18-19.  Both signed the form.   AR 420.  They made no endorsement corresponding to sedentary work restrictions. AR 417.  They indicated that Ms. Pederson could not perform light work, and that this prevented her from performing light work with an option to sit or stand.  AR 418. They twice declined to state when Ms. Pederson's limitations began.  AR 419, 420.  They indicated that Ms. Pederson's limitations in maintaining concentration, persistence, and pace, and in performing activities within a schedule, are "moderately severe."  *Id.*  They also indicated that Ms. Pederson has "severe" limitations in her ability to complete a workday and workweek without interruptions from psychologically based symptoms.  Tr. 419.

Dr. Mims and Ms. Matuk provided explanations for their limitations.  AR 420.  They stated that Ms. Pederson suffered a chemical burn to her foot, and that she has "considerable anxiety about her situation and symptoms consistent with PTSD [post-traumatic stress disorder]."  *Id.*  They also stated that Ms. Pederson exhibits persistent right lower-extremity swelling and associated marked sensitivity to temperature, touch, and position.  *Id.*  Finally, they stated that she has diminished cognitive processing due to this pain.  *Id.*  Dr. Mims and Ms. Mantuk declined to describe Ms. Pederson's response to treatment or prognosis.  *Id.*

**a.        Clinical Notes**

Ms. Pederson claims that the February 9, 2006, note is ambiguous regarding whether Ms. Mantuk attributed her improvement to her potassium levels or her methadone cessation.  Pl.'s Opening Br. 19.  The reviewing court must uphold the ALJ's findings if they are based upon

substantial evidence and "inferences reasonably drawn." *Batson*, 359 F.3d at 1193. If the evidence

supports more than one rational interpretation the reviewing court must defer to the ALJ's decision.

*Id.* (citing *Morgan v. Comm'r*, 169 F.3d 595, 599 (9th Cir. 1999)).

The ALJ found the November 5, 2005, assessment inconsistent with Ms. Matuk's clinical

notes. AR 21-22. The ALJ specifically cited "exhibit 29F/2," which corresponds to Ms. Matuk's

February 9, 2006, chart note. AR 22 (citing AR 406). Ms. Matuk wrote, "Here for [potassium] level

. . . looks much better now. Off morphine completely." AR 406. Ms. Matuk reiterated, "Looks

markedly better. Bright, articulate." *Id.* The ALJ noted this finding. AR 22.

Ms. Pederson bases her challenge upon the syntax of Ms. Matuk's comments. Pl.'s Opening

Br. 19, (citing AR 406). The antecedent to Ms. Matuk's "much better" comment cites Ms. Pederson's

potassium level; the following clause cites her morphine cessation. *Id.* Because Ms. Matuk again

stated that Ms. Pederson looks "markedly better" immediately after her reference to the morphine

cessation, *id.*, this court finds the ALJ's inference that the two comments are correlated reasonable.

The ALJ's interpretation of the February 9, 2006, chart note is therefore affirmed.

### b.    PTSD

Ms. Pederson also claims that the ALJ erroneously rejected Dr. Mims and Ms. Matuk's

statement that she had "anxiety consistent with PTSD." Pl.'s Opening Br. 19 (citing AR 22). Ms.

Pederson provides no citation to the record in support of her claim that Ms. Matuk appropriately

diagnosed PTSD. The ALJ discussed Dr. Mims and Ms. Matuk's PTSD assessment:

> Although they indicated that the claimant had anxiety consistent with
> PTSD, neither of them is a mental health professoinal. The claimant
> has undergone a number of psychological, neuropsychological, and
> psychiatric evaluations and none of these specialists diagnosed the

claimant with PTSD (exhibit 30F).

AR 22.

The ALJ may reject medical source opinions unsupported by clinical notes or inconsistent with the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (citing *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)). The record supports the ALJ's finding that no other source diagnosed Ms. Pederson with PTSD. Furthermore, Ms. Pederson's assertion that her documented anxiety supports a PTSD finding is unfounded. No authority suggests that anxiety alone establishes PTSD. For these reasons, the ALJ appropriately rejected Dr. Mims and Ms. Matuk's PTSD assessment.

### c.    Concentration, Persistence, and Pace

Ms. Pederson contends at length that the ALJ rejected Dr. Mims and Ms. Matuk's limitations in Ms. Pederson's ability to maintain attention, concentration, persistence, and pace. Pl.'s Opening Br., 21-22. Ms. Pederson refers the court to arguments made earlier in her briefing. *Id*. at 21. This court's review of Ms. Pederson's brief finds only the submission that the ALJ failed to consider that the "psychological ramifications of her intense, persistent pain could have been the basis for the limitations in concentration, persistence or pace assessed by Dr. Mims and Nurse Matuk." Pl.'s Opening Br. 21. Ms. Pederson does not cite the record regarding these limitations.

As noted, Dr. Mims and Ms. Matuk endorsed "moderately severe" limitations regarding Ms. Pederson's ability to maintain concentration, persistence, and pace. AR 419. They indicated the same limitation in Ms. Pederson's ability to perform activities within a schedule, and complete a normal workday and workweek. AR 419. The ALJ found their opinion regarding the effects of Ms. Pederson's pain unsupported by appropriate clinical notes. AR 22. The record shows that Dr. Mims

PAGE 7 - OPINION AND ORDER

and Ms. Matuk did not directly explain their assessment of Ms. Pederson's ability to maintain concentration, persistence, and pace.  AR 420-21.  Therefore, Ms. Pederson's submission that the ALJ failed to consider a correlation between her reported pain and Dr. Mims and Ms. Matuk's moderately severe limitation in concentration, persistence, and pace is unsupported by the record.

Ms. Pederson additionally quotes SSR 03-2p, without exact citation, regarding the ALJ's rejection of Dr. Mims and Ms. Matuk's finding that her concentration, persistence, and pace was limited.  Pl.'s Opening Br. 20-21.  Ms. Pederson quotes, "when treatment is delayed, the signs and symptoms may progress and spread, resulting in long-term and even permanent . . . psychological problems."  *Id.* at 20-21 (citing SSR 03-2p at *2) (available at 2003 WL 22399117).  This language does not establish that Dr. Mims and Ms. Matuk's opinion is supported by appropriate clinical notes.

Ms. Pederson also points to the SSR 03-2p instruction stating that "a mental evaluation may be requested . . . to determine if any undiagnosed psychiatric disease is present that could potentially contribute to a reduced pain tolerance."  Pl.'s Opening Br. 21 (citing SSR 03-2p at *3).  However, Ms. Pederson does not ask this court to order development of the record.  Development of the record is warranted when ambiguities arise concerning the onset date of a claimant found disabled.  *Sam v. Astrue*, 550 F.3d 808, 811 (9th Cir. 2008).  Because the ALJ did not find Ms. Pederson disabled, and because Ms. Pederson received four psychological examinations, discussed below, the record does not warrant further development regarding limitations assessed by Dr. Mims and Ms. Matuk.

The ALJ's finding that Dr. Mims and Ms. Matuk did not adequately support their opinion that Ms. Pederson's pain created "moderately severe" limitations in concentration, persistence, and pace is therefore affirmed.  Ms. Pederson fails to show that the ALJ erroneously rejected the November

PAGE 8 - OPINION AND ORDER

10, 2005, medical source statement submitted by Dr. Mims and Ms. Matuk.

### C.    Examining Physician Dr. McKellar

Ms. Pederson contends the ALJ improperly rejected examining physician Dr. McKellar's clinical assessment and limitations.  Pl.'s Opening Br. 17.

Dr. McKellar, a family practitioner, examined Ms. Pederson on December 22, 2005.  AR 395-97.  Dr. McKellar based his findings upon a clinical examination which showed that, "she appears to need assistance to step up more than 6 inches.  In general her muscle tone is poor with generalized muscle atrophy and deconditioning." AR 397.  Dr. McKellar noted lower extremity strength test results, and found that Ms. Pederson "appears to have 5+/5+ strength although she states she cannot dorsiflex her right foot or move her toes.  I have no way to assess that." Dr. McKellar also noted Ms. Pederson's lower extremity reflexes and decreased pinprick sensation.  *Id.*  In conclusion, Dr. McKellar assessed chronic regional pain syndrome following injury to the right lower extremity, chronic back pain with obscure etiology, chronic migraine headaches, and low intelligence.  *Id.*

Dr. McKellar assessed Ms. Pederson's work-related limitations:

> I don't think the patient should stand more than ten minutes, walk more than 50 feet without resting, sit more than ten minutes without changing position.  She shouldn't be lifting over ten pounds regularly.  No problem with hearing, speaking or handling objects.  Travelling would be difficult because of the problems with her right lower extremity.

*Id.*  Dr. McKellar subsequently stated that Ms. Pederson should lift no more than ten pounds, stand or walk less than two hours in an eight-hour day, and sit "less than about 6 hours" in an eight-hour day.  Dr. McKellar based these limitations upon severe deconditioning, chronic back pain, and

chronic regional pain syndrome.  AR 398-99.

The ALJ discussed Dr. McKellar's opinion at length.  AR 20.  The ALJ noted that Ms. Pederson's statements to Dr. McKellar regarding her alcohol and drug use and household assistance contradicted Ms. Pederson's reports to other medical providers.  *Id.*  The ALJ discussed Dr. McKellar's clinical findings, including muscle strength testing.  AR 21.  The ALJ also cited Dr. McKellar's statement that he could not ascertain the accuracy of Ms. Pederson's statement that she could not flex her right foot or move her toes.  AR 21.  Finally, the ALJ noted that Dr. McKellar's workplace limitations adopted limitations described by Ms. Pederson.  The ALJ concluded that these limitations "lacked objective support other than deconditioning."  *Id.*

Ms. Pederson contends that the ALJ ignored imaging studies supporting Dr. McKellar's conclusions.  Pl.'s Opening Br. 18.  This submission has little merit.  Dr. McKellar did not base his report on these studies, and this court cannot now construe such support.  Dr. McKellar himself concluded, "other than the tenderness [upon examination] the physical examination was normal and her x-rays do not demonstrate any specific abnormality."  AR 397.

The ALJ's findings regarding Dr. McKellar's work-related limitations adequately reflect the record.  Additionally, the ALJ need not accept a physician's opinion predicated upon subjective complaints of a claimant deemed not credible.  *Tonapetyan*, 242 F.3d at 1149.  For these reasons the ALJ's findings regarding Dr. McKellar are affirmed.

### D.    Medical Expert Dr. Crossen

Ms. Pederson challenges the ALJ's reliance upon a medical expert, psychologist Dr. Crossen. She contends that Dr. Crossen's opinion regarding the effects of her marijuana use is not based upon

the record. Ms. Pederson further contends that, absent Dr. Crossen's testimony, the record supports

a finding that she has moderately-severe limitations in concentration, persistence, and pace. Pl.'s

Opening Br. 21. Finally, Ms. Pederson contends, again without appropriate citation, that the ALJ

must offer "specific and *legitimate*" reasons to accept Dr. Crossen's opinion. *Id.*

First, the court notes that the "specific and legitimate" language relates to an ALJ's *rejection*

of a treating or examining physician. *Bayliss*, 427 F.3d at 1216. This standard does not establish

and that an ALJ has an obligation to show specific and legitimate reasons for *accepting* testimony.

Dr. Crossen stated that Ms. Pederson's marijuana use would effect her mood, anxiety, and

pain perception. AR 545. Dr. Crossen subsequently stated that Ms. Pederson's psychological

limitations are "marked" when she uses marijuana and "mild" when she does not use marijuana. AR

552-53. The ALJ reiterated Dr. Crossen's testimony in detail. AR 24. The ALJ accepted Dr.

Crossen's testimony because "he had the opportunity to review the entire record and hear the

claimant's testimony. [Dr. Crossen] also supported this testimony with citations to the record which

supported his opinion." AR 25.

Ms. Pederson cites seven medical sources she claims contradict Dr. Crossen's finding that

she experiences only mild restrictions in concentration, persistence, and pace. Pl.'s Opening Br. 20-

21. Ms. Pederson would apparently ask this court to find that each of these opinions support

moderate to severe restrictions in concentration, persistence, and pace.

Ms. Pederson first cites the opinions of Dr. Mims and Ms. Mantuk. *Id.* The psychological

opinions of Dr. Mims and Ms. Mantuk are not properly supported, as discussed above, and will not

be discussed again. Ms. Pederson additionally cites the reports of four examining psychologists, an

examining internist's opinion, and an examining orthopedist's opinion. *Id.* at 22. Each of these opinions is addressed in turn.

    **a.**    **Examining Psychologist Dr. Villaneuva**

Examining psychologist Dr. Villaneuva's February 1998 report concluded that Ms. Pederson's conduct in examination and test results made it "difficult to provide too detailed of an impression with this patient." AR 322. He added, "Clearly, as the patient now presents, she would not be capable of participating in a normal workday. Much of this may be behavioral" rather than the result of injury. AR 323. Dr. Villanueva made no specific work restrictions.

Ms. Pederson's citation to Dr. Villanueva's report does not establish severe restrictions in concentration, persistence, and pace. Ms. Pederson apparently would ask this court to infer such a restriction. This submission is not based upon the record and therefore fails.

    **b.**    **Examining Psychologist Dr. Plenger**

Ms. Pederson submits that examining psychologist Dr. Plenger "opined" that Ms. Pederson "had a decreased ability to sustain concentration and attention necessary to perform ongoing mental operations." Pl.'s Opening Br. 22 (citing AR 361).

Ms. Pederson's indicated citation shows that Dr. Plenger also stated, "Clearly, Ms. Pederson does not demonstrate any areas of outstanding neurocognitive impairment which would preclude her from performing activities that may be considered requisite for competitive employment." AR 361. Dr. Plenger's additionally made no work-related restrictions. AR 360-62. Ms. Pederson's submission selectively reads Dr. Plenger's report. She does not establish that Dr. Plenger's report contradicts Dr. Crossen's testimony.

### c.      Examining Psychologist Dr. Cole

Examining psychologist Dr. Cole stated that, "some problems in the areas of attention and concentration were noted," and concluded that if Ms. Pederson "pursues a vocational placement in the near future, then it is presumed: [sic] that her claimed pain problems, [sic] would be the primary factors which would impact her overall level of vocational success."  AR 389.

Dr.  Cole subsequently assessed no limitations in Ms. Pederson's ability to understand, remember, and carry out short, simple restrictions.  AR 391.  Dr. Cole assessed moderate limitations in Ms. Pederson's ability to understand, remember, and carry out detailed instructions, and a slight limitation on Ms. Pederson's ability to make judgments regarding simple work-related decisions. *Id.*  Dr. Cole also found moderate restrictions on Ms. Pederson's ability to interact appropriately with the public or respond appropriately to changes in a routine work setting.  AR 392.  Dr. Cole found slight restrictions in Ms. Pederson's ability to interact appropriately with supervisors or coworkers. *Id.*

The ALJ discussed Dr. Cole's extensive neuropsychological report.  AR 19-20.  The ALJ specifically noted Dr. Cole's IQ and test results.  AR 20. The ALJ also noted Ms. Pederson's report to Dr. Cole that she used marijuana daily, and last used it the night before Dr. Cole evaluated Ms. Pederson.  *Id.*

Ms. Pederson now claims that Dr. Cole's opinion supports her assertion that the ALJ erroneously relied upon Dr. Crossen.  Because the ALJ appropriately discussed Dr. Cole's report, and because Ms. Pederson does not establish that Dr. Cole's limitations were inappropriately omitted, this submission also fails.

PAGE 13 - OPINION AND ORDER

### d.    Examining Psychologist Dr. Binder

Examining psychologist Dr. Binder stated that Ms. Pederson "is clearly abusing marijuana," and that "at least some of her abnormalities on neuropsychological testing could be explained by chronic use of marijuana." AR 438.   Dr. Binder concluded that "I do not know if [Ms. Pederson] is employable; she certainly has limitations on her employability from a cognitive and psychological perspective." AR 441. However, Dr. Binder assessed no specific limitations regarding Ms. Pederson's concentration, persistence, and pace.  Ms. Pederson's submission states that Dr. Binder noted that she was "functioning poorly." Pl.'s Opening Br. 22.  This submission does not establish that Dr. Binder assessed moderate to severe limitations in concentration, persistence, and pace, or that the ALJ erroneously relied upon Dr. Crossen's opinion.

### e.    Examining Physician Dr. Dow

Ms. Pederson's challenge to the ALJ's reliance upon Dr. Crossen's opinion also cites examining physician Dr. Dow, stating that Dr. Dow found Ms. Pederson "unable to stay on task." Pl.'s Opening Br. 22 (citing AR 402-04).  This court's review of Dr. Dow's report finds no such statement; Dr. Dow commented that Ms. Pederson is "unable to stay on *topic* for more than one or two sentences even with significant prompting." AR 402 (emphasis added).  Dr. Dow concluded that Ms. Pederson exhibited "numerous diverse psychiatric manifestations." AR 404.  He did not, however, comment upon Ms. Pederson's ability to sustain concentration, persistence, and pace.  Ms. Pederson again fails to establish that Dr. Dow's opinion establishes restrictions in concentration, persistence, and pace, or that it contradicts Dr. Crossen's opinion.

//

PAGE 14 - OPINION AND ORDER

### f.    Examining Physician Dr. Matteri

Finally, Ms. Pederson cites examining orthopedist Dr. Matteri's observation that she is "rambling and incoherant" and his opinion that Ms. Pederson's psychiatric issues would prevent her from working. Pl.'s Opening Br. 22 (citing AR 448, 452). Dr. Matteri noted "it is difficult to assess Ms. Pederson's pain complaints because she of her rambling and at times incoherent presentation." AR 448. Dr. Matteri concluded that Ms. Pederson's "inability to be employed" is based upon her "severe somatoform and functional pain disorder, as well as her other psychiatric conditions." AR 452. Dr. Matteri did not comment upon Ms. Pederson's concentration, persistence, and pace. This opinion therefore does not establish that the ALJ erroneously relied upon Dr. Crossen's testimony.

### g.    Low IQ Test Results

Ms. Pederson additionally submits that her low IQ test results are a "consistent theme" in her mental health records. Pl.'s Opening Br. 21. Ms. Pederson does not assert how Dr. Crossen's testimony conflicts with these findings. Dr. Crossen testified that Ms. Pederson has "borderline intellectual abilities to begin with." AR 552.

Drs. Villanueva, Plenger, Cole, and Binder assessed Ms. Pederson's full scale IQ between 77 and 86. AR 320, 358, 386, 484. Ms. Pederson does not make her assertion clear to this court, but she appears to argue that her low IQ test results must necessarily be coupled with "moderate to severe limitations in ability to sustain concentration, persistence, and pace." Pl.'s Opening Br. 21. This court draws this inference because Ms. Pederson's support for such a limitation cites her IQ scores. *Id.* at 22. As discussed in detail above, the record shows that none of the four examining psychologists cited assessed "severe" work-related limitations in concentration, persistence, and pace.

### h.    Conclusion: Dr. Crossen's Testimony

The record does not show that any of Ms. Pederson's four psychological assessments establish a "severe" limitation in concentration, persistence, and pace.  Nor does the record support Ms. Pederson's submission that the opinions of examining physician Dr. Dow and examining orthopedist Dr. Matteri establish this limitation.  Therefore, Ms. Pederson's submission that the ALJ improperly rejected their opinions establishing a severe limitation in concentration, persistence, and pace in favor of reviewing psychologist Dr. Crossen's opinion is not based upon the record.  Ms. Pederson establishes no reversible omission regarding the ALJ's adoption of Dr. Crossen's opinion.

### E.    Degenerative Disc Disease

Ms. Pederson's challenge to the ALJ's review of the medical record also asserts that the ALJ improperly evaluated her degenerative disc disease.  Pl.'s Opening Br. 15.  Ms. Pederson does not point to a treating or examining physician's assessment that her degenerative disc disease contributes to her work-related impairments.  Ms. Pederson cites Dr. Mims's report that Ms. Pederson reported back pain, and Dr. McKellar's report that Ms. Pederson reported sacroiliac tenderness.  Pl.'s Opening Br. 16.  Ms. Pederson also points to imaging studies showing degenerative disc disease.  *Id.*

The ALJ noted examining physician Dr. McKellar's report that the her low back pain etiology was "obscure" and that "other than tenderness, the physical exam was normal and her x-rays did not demonstrate any abnormality."  AR 21 (citing exhibit 27F).  This finding directly quotes the record.  AR 21, 397.  The ALJ also noted that Dr. McKellar's limitations were based upon Ms. Pederson's report.  As noted above, an ALJ may reject physician opinions based upon reports of a claimant deemed not credible.  *Tonapetyan*, 242 F.3d at 1149.

Ms. Pederson submits that Dr. McKellar's report based his limitations upon this finding, but

her instant citation does not reflect this. AR 397. While Dr. McKellar stated that Ms. Pederson's limitations are due, in part, to "chronic back pain," Dr. McKellar made no correlation between Ms. Pederson's reported pain and any clinically established effects of degenerative disc disease. AR 399. Ms. Pederson's submission regarding Dr. McKellar is therefore not based upon the record.

Ms. Pederson also submits that Dr. Mims noted that Ms. Pederson reported lower back tenderness and limited range of motion. Pl.'s Opening Br. 16 (citing AR 256). Ms. Pederson's August 26, 2004, chart note shows that she exhibited limited range of motion and reported "exquisite" tenderness to palpation of her sacroiliac joint. AR 256. Dr. Mims made no work-related limitations and referred Ms. Pederson to neurologist Dr. Ryan for further investigation. *Id.*

Dr. Ryan evaluated Ms. Pederson's low back pain on September 20, 2004. AR 287-89. Dr. Ryan assessed complex regional pain syndrome regarding Ms. Pederson's right leg. AR 288. Dr. Ryan subsequently discussed possible complications arising from an epidural nerve block procedure and concluded, "I honestly think that this [back pain] is probably part of the complex regional pain syndrome." AR 289. Dr. Ryan did not diagnose degenerative disc disease or assess any related functional limitations.

The ALJ's findings regarding each of these practitioners is based upon the record. Ms. Pederson establishes no reversible error in the ALJ's review of her degenerative disc disease.

**F.    Conclusion: Medical Source Statements**

In conclusion, the ALJ's analysis of the medical record is based upon substantial evidence and the appropriate legal standards.

**III.    Lay Witness Testimony**

Ms. Pederson claims that the ALJ did not appropriately assess testimony submitted by lay

witness Tiesse Keller.  Pl.'s Opening Br. 23-24.

### A.    Standards: Lay Witness Testimony

The ALJ has a duty to consider lay witness testimony.  20 C.F.R. §§ 404.1513(d), 404.1545(a)(3), 416.913(d), 416.945(a)(3); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993).  The ALJ may not reject such testimony without comment, and he must give reasons germane to the witness for rejecting her testimony. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  However, inconsistency with the medical evidence may constitute a germane reason. *Lewis*, 236 F.3d at 512.

The reviewing court may affirm an ALJ's erroneous rejection of lay testimony if "the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion." *Stout v. Comm'r*, 454 F.3d 1050, 1055 (9th Cir. 2006).  Alternatively, the reviewing court may credit lay testimony if the record shows that crediting such testimony would establish workplace limitations resulting in disability. *Schneider v. Comm'r*, 223 F.3d 968, 976 (9th Cir. 2000).

### B.    Analysis: Lay Witness Testimony

Ms. Keller submitted a third party report to the record on May 27, 2004.  AR 135-43.  Ms. Keller stated that Ms. Pederson "does not do [too] much" because she experiences pain, and that she requires reminding to take her medication.  AR 135, 137.  Ms. Kellar also stated that Ms. Pederson's cooking is limited, and that Ms. Pederson does laundry and "some house cleaning" when she is not limited by pain.  AR 137.  Ms. Kellar stated that Ms. Pederson does not drive due to pain in her foot, back, and medication side effects, and that Ms. Pederson cannot walk far.  AR 138.  Finally, Ms.

Keller stated that Ms. Pederson has difficulty completing tasks, and may walk 50-80 yards before requiring rest. AR 140.

The ALJ discussed Ms. Keller's report. AR 18. The ALJ specifically noted Ms. Keller's report that she helped Ms. Pederson with household chores, took Ms. Pederson shopping, and that Ms. Pederson used a motorized cart on these occasions. *Id.* The ALJ also noted Ms. Keller's report that Ms. Pederson cared for her cat, experienced no difficulties in personal care, did laundry and some household cleaning, managed her own money, and went outside daily. *Id.* Finally, the ALJ noted Ms. Keller's report that Ms. Pederson had frequent visitors, had no problems getting along with others, and managed changes in her routine. *Id.*

Ms. Pederson claims that the ALJ failed to address limitations Ms. Kellar identified, and that Ms. Kellar's report establishes that Ms. Pederson may not perform substantial gainful activity. Pl.'s Opening Br. 24. The ALJ omitted Ms. Keller's statements that Ms. Pederson required reminding regarding her medication and "does not do [too] much." The ALJ also omitted Ms. Keller's statements that Ms. Pederson cannot walk far, but may also walk 50-80 yards before requiring rest.

Ms. Pederson does not explain the manner in which these statements are disabling. An ALJ's omission of lay witness testimony is harmless when it is irrelevant to the ultimate disability decision. *Stout*, 454 F.3d at 1055-56.

The ALJ's RFC encompasses "sedentary to light work" with no more than two noncontinuous hours of "standing/walking." AR 25. The Commissioner designates a job as "light work" when it requires lifting no more than twenty pounds at a time, with frequent lifting or carrying of objects weighing up to ten pounds. 20 C.F.R. § 404.1567(b). Such work may also require "a good deal of walking or standing." *Id.* It is not clear whether Ms. Keller's reported restrictions preclude

performance of "a good deal of walking or standing." However, because the ALJ also found that Ms. Pederson could perform sedentary work, this ambiguity is irrelevant. Ms. Keller's report does not establish that Ms. Pederson's limitations preclude performance of work identified by the ALJ at step five in the sequential proceedings. This omission is therefore inconsequential. Ms. Pederson establishes no reversible error in the ALJ's assessment of Ms. Keller's testimony.

## IV.    Step Five Findings

Finally, Ms. Pederson contends that the ALJ's step five finding failed to address the limitations above. The ALJ's questions to a vocational expert, and subsequent findings at step five in the sequential proceedings, need not include unsupported limitations. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001). Because the ALJ committed no reversible error, Ms. Pederson's assertion regarding omitted limitations is rejected.

Ms. Pederson raises additional arguments regarding her borderline intellectual functioning and the *Dictionary of Occupational Titles* ("DOT").

### A.    Borderline Intellectual Functioning

Ms. Pederson contends that the ALJ is required, as a matter of law, to include borderline intellectual functioning in her questions to the vocational expert. Pl.'s Opening Br. 25. However, Ms. Pederson points to no controlling authority. *Id.* The Commissioner submits that "borderline intellectual functioning" describes an impairment, rather than a work-related limitation resulting from that impairment, and therefore should not be submitted to the VE. Def.'s Br. 20. Ms. Pederson does not rebut this assertion.

Dr. Crossen testified that Ms. Pederson had "no more than moderate" limitations relating to her intelligence test results. AR 553. The ALJ asked the vocational expert to consider a hypothetical

claimant restricted to "simple, routine tasks." AR 558.  This court finds the ALJ's "simple, routine"

characterization consistent with limitations established by the record, discussed above.  The ALJ's

RFC assessment and hypothetical questions to the vocational expert therefore adequately addressed

limitations ascribed to Ms. Pederson's possible borderline intellectual functioning.

> **B.    *Dictionary of Occupational Titles* Reasoning Requirements**

Ms. Pederson finally contends that the ALJ's step five finding is inconsistent with the *DOT*.

She specifically alleges that the ALJ incorrectly considered "general educational development"

("GED") reasoning requirements.  Pl.'s Opening Br. 26.  As noted, the ALJ instructed the VE to

consider limitations including "simple, routine tasks."  AR 558.  The VE cited three *DOT* job

specifications: touch up screener, production assembler, and semi-conductor assembler.  AR 559.

The VE indicated that these jobs are compatible with "simple tasks." *Id.*  The *DOT* assigns the touch

up screener and production assembler positions reasoning level two, and the semi-conductor

assembler position GED reasoning level three. *DOT*, (*available at* http://www.occupationalinfo.org

(last visited January 29, 2009)).  However, the VE testified that the semi-conductor assembler

position was recently updated and that it is commonly performed in Oregon at SVP level two.  AR

559.

GED level two reasoning specifies an ability to "apply commonsense understanding to carry

out detailed but uninvolved written or oral instructions" as well as an ability to "deal with problems

involving a few concrete variables in or from standardized situations." *DOT*, Appendix 3 (*available

at* http://www.occupationalinfo.org/appendxc_1.html#III (last visited January 29, 2009)).

The VE stated that a person limited to "simple, routine tasks" could perform the specified

jobs.  AR 558.  Ms. Pederson does not establish that "simple, routine tasks" are inconsistent with

PAGE 21 - OPINION AND ORDER

level two reasoning.  Her submission addresses "simple one, two step *instructions*."  Pl.'s Opening

Br. 26 (emphasis added).  Ms. Pederson provides no citation establishing that the ALJ erred

regarding "simple one, two step *tasks*."  The ALJ's reliance upon the VE's suggested occupations

should be sustained.

For these reasons, the ALJ's step five finding that Ms. Pederson could perform work in the

national economy is affirmed.

## **CONCLUSION**

The Commissioner's decision that Ms. Pederson did not suffer from disability and is not

entitled to benefits under Title II of the Social Security Act is based upon correct legal standards and

supported by substantial evidence.  The Commissioner's decision is AFFIRMED and the case is

dismissed.

IT IS SO ORDERED.

Dated this  2nd  day of  February  , 2009.

/s/ Michael W. Mosman
Michael W. Mosman
United States District Judge

PAGE 22 - OPINION AND ORDER